<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| ANGELA BURKE,  :  | **Civil Action No. 19-14148 (SRC)** |
| :  |  |
| Plaintiff, : |  |
| :  | **OPINION** |
| v.  : |  |
| :  |  |
| COMMISSIONER OF  : |  |
| SOCIAL SECURITY,  : |  |
| Defendant. : |  |
| :  |  |

<u>**CHESLER, District Judge**</u>

This matter comes before the Court on the appeal by Plaintiff Angela Burke ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled under the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and, having considered the submissions of the parties without oral argument, pursuant to L. Cɪᴠ. R. 9.1(b), finds that the Commissioner's decision will be affirmed.

In brief, this appeal arises from Plaintiff's application for disability insurance benefits, alleging disability beginning July 7, 2014. A hearing was held before ALJ Beth Shillin (the "ALJ") on May 14, 2018, and the ALJ issued an unfavorable decision on August 21, 2018. Plaintiff sought review of the decision from the Appeals Council. After the Appeals Council denied Plaintiff's request for review, the ALJ's decision became the Commissioner's final decision, and Plaintiff filed this appeal.

1

In the decision of August 21, 2018, the ALJ found that, at step three, Plaintiff did not meet or equal any of the Listings.   At step four, the ALJ found that Plaintiff retained the residual functional capacity to perform sedentary work, with certain limitations.   At step four, the ALJ also found that this residual functional capacity was not sufficient to allow Plaintiff to perform any of her past relevant work.   At step five, the ALJ determined, based on the testimony of a vocational expert, that there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity.   The ALJ concluded that Plaintiff had not been disabled within the meaning of the Act.

On appeal, Plaintiff argues that the Commissioner's decision should be reversed and the case remanded on three grounds: 1) at step four, the ALJ erred by giving a treating physician's opinion only "some" weight; 2) at step five, the ALJ made multiple errors; and 3) at step four, the ALJ failed to give proper weight to Plaintiff's statements about her symptoms.

Plaintiff argues that, at step four, the ALJ erred by giving the opinion of treating physician Dr. Shah only "some" weight.   Plaintiff contends that it was inappropriate for the ALJ to give greater weight to the opinions of agency reviewing physicians than to the opinion of a treating physician.   In support, Plaintiff points to 20 C.F.R. § 404.1527, which the Commissioner agrees is the relevant Regulation.   The plain language of that Regulation, however, does not support Plaintiff's argument, since it states:

> Generally, we give more weight to medical opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating

2

> source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.

20 C.F.R. § 404.1527(c)(2). This Regulation states that, generally, a treating physician's opinion will be given controlling weight *if* certain conditions are met. Plaintiff argues as if this Regulation gives unconditional supremacy to a treating physician's opinion, but it does not state that: the Regulation requires certain conditions to be met for a physician's opinion to be given controlling weight.

Dr. Shah's report, dated August 7, 2015, states that, *inter alia*, Plaintiff can stand and/or walk for less than two hours per day, and sit for less than six hours per day. (Tr. 728.) Citing this report, the ALJ stated:

> Moreover, in August 2015, Dr. Shah opined that the claimant can lift and carry ten pounds, walk less than 2, and sit less than 6 hours in an eight-hour workday (1F at 2-3). In addition, Dr. Shah opined that the claimant is limited to pushing and pulling as much as she can lift and carry (Id.). While I recognize the treating relationship between Dr. Shah and the claimant, the medical record showed that the claimant benefited from the fusion surgery performed by Dr. Shah and his opinion did not mention subsequent medical records in 2015 and 2016. Accordingly, I give only some weight to this opinion and take some issue with his assessments of amount of time spent sitting and standing and walking.

(Tr. 20.) In this paragraph, the ALJ presented two reasons for giving only some weight to Dr. Shah's opinion. While the reasons are presented in very brief fashion, in the context of the ALJ's decision as a whole, the meaning is clear to the Court: 1) Dr. Shah's opinion appears inconsistent with the evidence showing benefit from the fusion surgery performed by Dr. Shah in

3

July of 2015; 2) medical opinions subsequent to Dr. Shah's opinion show less impairment. These points are developed in other parts of the step four analysis. The bottom line is that this is a case in which there were many medical opinions, from treating physicians, agency reviewers, and independent medical examiners. Because the medical opinions were not unanimous, the ALJ had to choose which ones got more weight and which ones got less. The ALJ explained her reasons and, in the end, she found that the weight of the medical evidence supported the conclusion that Dr. Shah's opinion deserved less weight. This appears to satisfy the requirements of 20 C.F.R. § 404.1527(c)(2), which states that the ALJ will give a treating physician's opinion controlling weight *if* it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." The ALJ found that Dr. Shah's opinion was inconsistent with other substantial evidence of record, as permitted by the Regulation, and therefore properly decided not to give it controlling weight. Plaintiff has failed to persuade this Court that the ALJ erred in giving only some weight to Dr. Shah's opinion.

Plaintiff argues that, at step five, the ALJ made multiple errors. Plaintiff first contends that the ALJ failed to perform the required transferable skills analysis. Before considering the legal issues, the Court observes that, in short, at step five, the vocational expert testified that Plaintiff had previously had a job which, in significant part, involved the skills of a revenue stamp clerk, and that these skills would transfer to another job, that of a revenue stamp clerk. (Tr. 53-54, 60, 62.) Thus, Plaintiff challenges the inference that Plaintiff, having had a previous job which included work as a revenue stamp clerk, had skills which could be transferred to a new job as a revenue stamp clerk. Plaintiff argues that the ALJ failed to do the analysis necessary to

4

support this inference.

Plaintiff argues that the ALJ failed to perform the transferable skills analysis required by the Program Operations Manual System (POMS.) In opposition, the Commissioner quotes the Third Circuit's decision in Edelman:

> POMS is the authorized means for issuing official Social Security policy and operating instructions. POMS § AO 20002.001. These regulations do not have the force of law.

Edelman v. Commissioner of Social Sec., 83 F.3d 68, 71 (3d Cir. 1996). In reply, Plaintiff cites SSR 13-2p, which states:

> We require adjudicators at all levels of administrative review to follow agency policy, as set out in the Commissioner's regulations, SSRs, Social Security Acquiescence Rulings (ARs), and other instructions, such as the Program Operations Manual System (POMS), Emergency Messages, and the Hearings, Appeals and Litigation Law manual (HALLEX).

The Court finds that, under Third Circuit law, statements in POMS do not have the force of law. SSR 13-2p does not conflict with Edelman, since the Ruling says only that it is agency policy that adjudicators shall follow agency policy. Plaintiff has failed to persuade this Court that failure to follow agency policy that does not have the force of law in the Third Circuit is reversible error. Moreover, as already discussed, the inference that someone who worked as a revenue stamp clerk previously has the skills to do so again does not appear to need further analysis to justify it.

Plaintiff next argues that, at step five, the ALJ made up a number "completely out of whole cloth," the 7700 jobs available in the national economy for a revenue stamp clerk. (Pl.'s Br. 21.) Plaintiff appears to have overlooked the vocational expert's testimony. The hearing transcript shows this exchange:

5

> Q. So what would be availability of jobs for revenue stamp clerk on a full-time basis be?
> A. 7,700 jobs.

(Tr. 62.)  The ALJ did not make up the number 7,700; the vocational expert gave that number in her testimony.  Plaintiff then argues that 7,700 jobs does not constitute a substantial number of jobs, but cites no authority in support.  In opposition, the Commissioner cites the many courts that have concluded that far smaller numbers of jobs constitute substantial numbers.  The Court finds that Plaintiff has failed to offer any basis to conclude that 7,700 jobs does not constitute a substantial number.

Plaintiff next argues that the vocational expert's testimony that no job could accept an employee who was off task for more than 10% of the workday was in conflict with the residual functional capacity assessment.  Plaintiff contends that the residual functional capacity assessment must necessarily result in Plaintiff being off task for more than 10% of the workday, because of Plaintiff's incontinence and her need to stand periodically.  The residual functional capacity determination states: "The claimant should have easy access to a bathroom.  The claimant requires an option to stand, walk, or stretch for about 10 to 15 minutes after sitting an hour to an hour and a half."  (Tr. 15-16.)  Plaintiff does not explain how these limitations mean that Plaintiff would necessarily be off task for more than 10% of the workday.  The claimant bears the burden of proof at steps one through four.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  Although Plaintiff has raised this argument as to step five, it is actually a challenge to the step four residual functional capacity determination: Plaintiff is, in effect, arguing for a further limitation in the residual functional capacity assessment.  Plaintiff has not mustered the evidence to show that these limitations would result in Plaintiff's being off-task more than 10%

of the workday.

Plaintiff has not persuaded this Court that the ALJ erred at step five.

Lastly, Plaintiff argues that the ALJ failed to give proper weight to Plaintiff's subjective statements about her symptoms. The ALJ considered Plaintiff's statements about her symptoms and stated:

> [T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent with the medical record. First, the claimant has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Second, although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine. Third, the claimant betrayed no evidence of debilitating symptoms while testifying at the hearing. While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of functioning on a day-to-day basis, the apparent lack of debilitating symptoms during the hearing is a permissible factor to consider amongst other factors in determining claimant's allegations and the claimant's residual functional capacity.

(Tr. 16.)

The Third Circuit has established the following four-part test to determine the credibility of a social security claimant's subjective complaints. That test requires:

> (1) that subjective complaints of pain be seriously considered, even where not fully confirmed by objective medical evidence; (2) that subjective pain may support a claim for disability benefits and may be disabling; (3) that when such complaints are supported by medical evidence, they should be given great weight; and finally (4) that where a claimant's testimony as to pain is reasonably supported by medical evidence, the ALJ may not discount claimant's pain without contrary medical evidence.

Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985) (citations and quotations omitted).

Although the ALJ is required to consider the claimant's subjective complaints, the ALJ may

reject these complaints when they are inconsistent with the objective medical evidence, claimant's own testimony, or other evidence in the record. Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).

Plaintiff argues that the ALJ's statement that Plaintiff's medical treatment has been essentially routine seems incorrect, given the fact that Plaintiff had spinal surgery. The Court agrees that this statement may well not be supported by substantial evidence, but this is harmless error at most. The ALJ's determination that Plaintiff's subjective complaints were not entirely consistent with the evidence was also based on other evidence, notably her presentation at the hearing before the ALJ and her reports of her daily activities. The ALJ stated that Plaintiff displayed no debilitating symptoms while testifying at the hearing, and Plaintiff has not disputed this. (Tr. 16.) This constitutes substantial evidence under Hartranft. The ALJ's determination that Plaintiff's statements about the limiting effects of her symptoms are not entirely consistent with the evidence of record is supported by substantial evidence.

Plaintiff has failed to persuade this Court that the ALJ erred in her decision, or that she was harmed by any errors. This Court finds that the Commissioner's decision is supported by substantial evidence and is affirmed.

                                                             s/ Stanley R. Chesler
                                                           STANLEY R. CHESLER, U.S.D.J.

Dated: June 4, 2020